UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

\_\_\_\_\_

| | | |
|---|---|---|
| JAMES FOX, # 458647, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:13-cv-1003 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| DANIEL HEYNS, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought by two state prisoners pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The plaintiff's are prisoners James Fox and Scott Perreault. This lawsuit arises out of conditions of their confinement in 2013 at the Richard A. Handlon Correctional Facility (MTU). Plaintiffs named the Director of the Michigan Department of Corrections (MDOC) Daniel Heyns and three MDOC employees at MTU as defendants: Warden Cathleen Stoddard, Deputy Warden Shawn Young, and Chaplain David Leslie.

Plaintiffs allege that they have been "denied recognition of Christian Identity Faith at the institutional level, all the way up to the Director's Office." (Am. Compl. ¶ IV, docket # 15, Page ID 44). They allege that defendants have violated their First Amendment rights. (*Id.*). Plaintiff Perreault alleges that defendant Young violated his First Amendment rights on November 4, 2013, by subjecting Perreault to a retaliatory transfer. (*Id.* at Page ID 46). Plaintiffs seek injunctive relief compelling the MDOC to recognize the "Christian Identity Faith" and recognize a series of "holy

days" and baptism by full body immersion.  (*Id.* at Page ID 45).  Plaintiff Perreault seeks an injunction compelling defendants to transfer him to a "down state" prison.  (*Id.* at Page ID 47).

The matter is now before the court on defendants' motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a).  (docket # 18).  Plaintiffs have filed their response.  (docket # 21).  For the reasons set forth herein, I recommend that all plaintiffs' claims against MTU defendants Stoddard, Young, and Leslie be dismissed because they are moot.  I recommend that defendants' motion for summary judgment be granted and that all plaintiffs' claims against defendants be dismissed.

### Applicable Standards

#### A.      Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone*

-3-

*v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B.    Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.  The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court.  548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).  The procedural bar does not apply where the State declines to enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1]  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth

---

[1]A copy of the policy directive is found in the record.  *See* docket # 19-2, Page ID 72-78.

Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of

the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or the warden's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has held that "an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiffs are inmates serving lengthy prison sentences in the custody of the Michigan Department of Corrections (MDOC) on their criminal convictions.  Plaintiff Fox is currently an inmate at the Alger Correctional Facility (LMF).  Plaintiff Perreault is a prisoner at the Chippewa Correctional Facility (URF). The defendants are the Director of the Michigan Department of Corrections (MDOC) Daniel Heyns and three MDOC employees at MTU:  Warden Cathleen Stoddard, Deputy Warden Shawn Young, and Chaplain David Leslie.

## I.      Prisoner Fox

 Prisoner Fox filed two grievances at MTU and pursued them through Step III of the MDOC's grievance process before filing this lawsuit.

### A.      MTU-13-03-0344-20b

On March 25, 2013, plaintiff filed a grievance and the grievance coordinator assigned it Grievance No. MTU-13-03-0344-20b (docket # 19-3, Page ID 89).  Plaintiff complained that he had not been provided with a Christian Identity group service at MTU:

> I declared my religious preference by filling out the religious preference form.  My religious preference is "Christian Identity."  There is no Christian Identity Service at this facility according to the Chaplain.  By failing to provide Christian Identity Services at this Facility, the Chaplain and the administration are denying me my 1st Amendment right to freely exercise my religion.

(*Id.*).  The Step I response stated as follows:

> This is an issue that the institution cannot address.  It is not the chaplain or the administration's decision not to allow Christian Identity to meet.  As I instructed your leader, you must submit in writing your request to be discussed with the Chaplain's Advisory Council.

(*Id.*).

Plaintiff filed an appeal.  He received the following response at Step II from the warden:

In your first step grievance you write that the department does not recognize your "Christian Identity" faith for services to be held.  Because of this, you believe you are being denied your 1st Amendment right to freely exercise your religion.

Your Step I grievance was answered by Chaplain D. Leslie.  He wrote that a decision to recognize a group for time and space for services could not be established at a facility level. He advised you that you must submit a request in writing to be discussed with the Chaplain Advisory Council about your concern.

Your appeal has been reviewed by my office.  Your concern remains the same.  However, I concur with the step 1 response.  Per PD 05.03.150, Religious Beliefs and Practices of Prisoners, sections L and M, clearly outline steps that need to be taken in an attempt to get a religious group recognized by the department I recommend that you refer to the policy sections prior to any further action taken.

Though the department does not recognize your religious group, it does not mean that we are attempting to stop you from practicing your beliefs privately.  However, until or unless the department recognizes the group, services will not be allowed.

I consider this grievance resolved at this level.

(*Id.* at Page ID 88).

Plaintiff's Step III appeal was unsuccessful.  The Grievance and Appeals Section upheld the

Step II response:

Your Step III grievance, including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".  The response you received at Steps I & II reflect that your issue was in fact considered and appropriately investigated. As there is no additional information or basis found for relief at Step III, the Step II decision is upheld at Step III.

(*Id.* at Page ID 86).

B.     MTU-13-03-0343-20z

On March 25, 2013, plaintiff filed a grievance and the grievance coordinator assigned it Grievance No. MTU-13-03-0343-20z. (docket # 19-3, Page ID 95). Fox complained that his request for baptism by full body emersion had been denied:

> I have requested that I be baptized by full body immersion in water which is a sincerely held belief of my Christian faith. By not allowing full body immersion baptism, the Chaplain and Deputy Young are effectively denying me the right of practice of my religion.

(*Id.*). The Step I response stated as follows:

> Christian Identity is not a recognized faith group that list what should be allowed for their faith and practice. Baptism is not listed as a mandatory practice of religion in prison. We do not have a place to keep it. Therefore, we do not have one.

(docket # 19-3, Page ID 95).

Plaintiff filed an appeal. He received the following response at Step II from the warden:

> In your first step grievance you write that you are not being allowed to be baptized as part of your religious belief.
>
> Your grievance was answered by Chaplain Leslie. In part, he wrote that policy does not require full submersion Baptism be performed.
>
> Your appeal has been reviewed by my office and is denied at this level. There is nothing in PD 05.03.150, Religious Beliefs and Practices of Prisoner, that requires individuals to receive a full submersion baptism. There are other acceptable means to receive baptism and those will be afforded to you upon your request. Please let the Chaplain know if you wish to proceed.

(*Id.* at Page ID 94).

Plaintiff pursued an appeal of this grievance to Step III of the MDOC's grievance process.

On July 31, 2013, the Grievance and Appeals Section entered the following Step III response:

> Your Step III grievance, including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". The response you received at Steps I & II reflect that your issue was in fact considered and appropriately investigated. As there is no additional information or basis found for relief at Step III, the Step II decision is upheld at Step III.

-10-

(*Id.* at Page ID 92).

## II.  **Prisoner Perreault**

Plaintiff Perreault filed seven grievances at MTU and pursued them through Step III decisions by the MDOC's Grievance and Appeals Section.  Four grievances are unrelated to any claim at issue in this lawsuit.  In Grievance No. MTU-13-05-0550-01g (docket # 19-3, Page ID 100-07) Perreault complained that he should not have been charged a co-pay fee for medical services). Grievance No. MTU 13-02-0204-25z (docket # 19-3, Page ID 120-24) was a complaint that Perreault had not been provided with an area for confidential discussions with his attorney.  In Grievance No. MTU-12-07-0763-14z (docket # 19-3, Page ID 125-29) prisoner Perreault complained about the size of the prison's library and the temperature inside it.  Prisoner Perreault's Grievance No. MTU-12-03-0288-12d (docket # 19-3, Page ID 130-35) was a complaint that he was not receiving appropriate medical treatment for hernia.  Three of prisoner Perreault's grievances warrant further discussion.

### A.  MTU 13-03-0286-20a

On March 6, 2013, prisoner Perreault filed a grievance and the grievance coordinator assigned it Grievance No. MTU-13-03-0287-20a.  (docket # 19-3, Page ID 119).  Plaintiff complained that MTU's chaplain failed to respond to his concern that Christian Identity had not received formal MDOC recognition as a religious group:

> This grievance is for M.T.U. and M.D.O.C.'s failure to recognize my Christian faith denomination of "Christian Identity".  "Christian Identity" is a "Bona Fide" religion, recognized by the Federal Government in the United States and in all the Anglo-Saxon nations abroad.  Prison officials are obligated to treat religions in an even handed manner. You are violating the 5th and 14th Amendment equal protection laws.  Prisoners are entitled to a reasonable opportunity of pursing faith compared to opportunities of fellow prisoners. *Cruz v. Beto* 92 S. Ct. 1079.  Under the Religious Land Use and Institutionalized Persons Act of 2000, and *Cutter v. Wilkinson*, 125 S. Ct. 2113, the proscriptions of the Act does not

> differentiate among bona fide faiths.  As a Christian Identist, no other Christian
> denomination service will work.  No substitute.  There [are] enough Christian Identist
> inmates to satisfy the "Rule of 5."  A "substantial burden["] has been imposed on my 1st
> Amendment free exercise of religion through 42 U.S.C.A. § 2000cc-1, cc-5(A)(B)(C).

(docket # 19-3, Page ID 119).  The Step I response advised prisoner Perreault that no individual at

MTU was authorized to provide formal recognition of any faith group on the MDOC's behalf.  (*Id.*).

Plaintiff pursued an appeal.  The warden's Step II response advised prisoner Perreault that

the steps necessary to obtain recognition for a religious group:

> Per PD 05.03.150, Religious Beliefs and Practices of Prisoners, sections L and M, clearly
> outline steps that need to be taken in an attempt to get a religious group recognized by the
> department.  I recommend that you refer to the policy sections prior to any further action
> taken.
>
> Though the department does not recognize your religious group, it does not mean that we
> are attempting to stop you from practicing your beliefs privately.  However, until or unless
> the department recognizes the group, services will not be allowed.

(*Id.* at Page ID 118).

Plaintiff filed an appeal.  On August 13, 2013, Perreault received the following response

from the MDOC's grievance and appeals section:

> Your Step III grievance, including any materials included with your appeal from Step II, has
> been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs
> in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".  You claimed that the
> MDOC does not recognize your particular Christian denomination an[d] as a result, your
> sincerely held religious beliefs are being substantially burdened.
>
> The response you received at Step II reflects that your issues were in fact considered and
> appropriately investigated at the facility level.  As there is no additional information or basis
> found for relief at Step III, the Step II decision is upheld.  You are referred to PD 05.03.150
> "Religious Beliefs and Practices of Prisoners", Paragraph K., for information regarding the
> process by which a religious group not recognized by the Department may request such
> recognition.

(*Id.* at Page ID 116).

B.   <u>MTU-13-03-0287-20b</u>

-12-

On March 6, 2013, prisoner Perreault filed a grievance and the grievance coordinator assigned it Grievance No. MTU-13-03-0287-20b. (docket # 19-3, Page ID 111). In this grievance, Prisoner Perreault complained that full body immersion baptism was not available at MTU:

> My right to free exercise of religion under the "1st Amendment" and the "Religious Land Use and Institutionalized Persons Act" (R.L.U.I.P.A.) are being violated. My sincerely held religious beliefs, per scripture, through the Holy Bible, require the need for me to be baptized by means of full body immersion. The chaplain told me "No." He said MTU does not have to do it and MTU is not and will not be equipped to do so. The warden did not respond to my attempt to resolve. 42 USCA § 2000cc-1 says: "No government shall impose a substantial burden on the religious exercise of a person residing or confined to a institution." 42 USCA § 2000cc-3(c) says you can not burden any religious belief, or restrict or burden exercise. 42 USCA § 2000cc-3(c) also states the institution may have to incur expenses to avoid imposing a substantial burden of religious exercise. My soul's in jeopardy. That is my situation.

(*Id.*). Chaplain Leslie gave the following Step I grievance response:

> Mr. Perreault['s] request for Baptism was addressed. We do not have a Baptistry. We have no place to keep a Baptistry. Policy doesn't require a Baptism for prisoners. His request has been address[ed] to the warden.

(*Id.*).

Plaintiff filed an appeal. The warden gave the following response at Step II of the grievance process:

> In your first step grievance you write that you are not being allowed to be baptized as part of your religious belief.

> Your grievance was answered by Chaplain D. Leslie. In part, he wrote that policy does not require a full submersion Baptism be performed.

> Your appeal has been reviewed by my office and is denied at this level. There is nothing in PD 05.03.150, Religious Beliefs and Practices of Prisoner, that requires individuals to receive a full submersion baptism. There are other acceptable means to receive baptism and those will be afforded to you upon your request. Please let the Chaplain know if you wish to proceed.

(*Id.* at Page ID 110).

Plaintiff filed a Step III appeal.  The grievance and Appeals Section's decision at Step III

upheld the Step II response:

> Your Step III grievance, including any materials included with your appeal from Step II, has
> been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs
> in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".  The response you
> received at Steps I & II reflect that your issue was in fact considered and appropriately
> investigated. As there is no additional information or basis found for relief at Step III, the
> Step II decision is upheld at Step III.

(*Id.* at Page ID 108).

      C.    <u>MTU-13-03-0285-20d</u>

On March 6, 2013, Perreault filed a grievance and the grievance coordinator assigned it

Grievance No. MTU-13-03-0287-20b.  (docket # 19-3, Page ID 115).  In this grievance, prisoner

Perreault complained that the MDOC had not made arrangements for "proper observance" of a list

of holidays:

> The ability for myself and others similarly situated to properly observe the "biblical
> Christian Holy Days" are being "substantially burdened ".  My 1st Amendment rights and
> "Free Exercise of Religion" under the "Religious Land Use and Institutionalized Persons
> Act" are violated.  The M.D.O.C. makes no provisions for Christians to properly observe:
> "Passover, unleavened bread, Pentecost, Feast of Trumpets, Day of Atonement, Feast of
> Tabernacles, and the Last Great Day", as well as the weekly "7th Day Sabbath".  Therefore,
> I am being forced to violate dietary laws as well as Sabbath, and holy day laws.  42 USCA
> § 2000cc-1 and cc-3(A)(B)(C) says no institution shall impose a substantial burden on a
> prisoner's religious exercise, beliefs, etc.  It also states that the prison shall incur expenses
> in its own operation to avoid imposing a substantial burden.  My sincerely held religious
> beliefs are being substantially burdened.

(*Id.*).  Chaplain Leslie's response at Step I of the grievance process advised plaintiff that Christian

Identity had not been formally recognized by the MDOC as a religious faith group.  (*Id.*).

Plaintiff filed an appeal and the warden gave the following Step II response:

> In your first step grievance you write that you are being denied recognition of "biblical Christian Holy Days" for your Christian Identity faith. Because of this, you write that your "religious beliefs are being substantially burdened".
>
> Your Step I grievance was answered by Chaplain D. Leslie. In part, he writes that Christian Identity is not a recognized faith group by the department. Thus, your wanted religious holy days are not approved. Your grievance was denied.
>
> Your appeal has been reviewed by my office and is denied at this level. I concur with the Step I response. No further action will be taken at this time.

(docket # 19-3, Page ID 114).

The Grievance and Appeals section's Step III response upheld the warden's decision at

Step II:

> Your Step III grievance; including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". You claimed that the MDOC does not recognize your particular Christian denomination an[d] as a result, your sincerely held religious beliefs are being substantially burdened.
>
> The responses you received at Steps I and II reflect that your issues were in fact considered and, appropriately investigated at the facility level. As there is no additional information or basis found for relief at Step III, the Step II decision is upheld. You are referred to PD 05.03.150 "'Religious Beliefs and Practices of Prisoners", Paragraph K, for information regarding the process by which a religious group not recognized by the Department may request such recognition.

(*Id.* at Page ID 112).

## Discussion

A.     Mootness

Plaintiffs seek injunctive relief. Plaintiffs are inmates at LMF and URF . Defendants

Stoddard, Young, and Leslie are employed at MTU. The three MTU defendants no longer have any

authority over the conditions of plaintiff's confinement. Plaintiff's claims for injunctive relief

against defendants Stoddard, Young, and Leslie are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

      B.    <u>Exhaustion</u>

      Defendants have raised the affirmative defense that plaintiffs did not properly exhaust their administrative remedies against them as required by 42 U.S.C. § 1997e(a).  Plaintiff Perreault's argument that he was not required to exhaust his retaliation claim against defendant Young (Plf. Brief at 1, docket # 21, Page ID 137) is untenable.  Exhaustion is mandatory. *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.  Defendants Stoddard and Young lacked the authority to grant plaintiffs' requests because plaintiffs  never sought, much less obtained, recognition of Christian Identity as a faith group through the MDOC's procedure (Policy Directive 05.03.150, ¶ K).[2]  *See Washington v. Caldwell*, No. 2-11-CV-10448, 2013 WL 1189713, at * 3 (E.D. Mich. Jan. 31, 2013) (collecting cases).  The "proper exhaustion" requirement is "designed to deal with parties who do not want to exhaust[.]" *Woodford*, 548 U.S. at 89.  Plaintiffs' attempt to bypass the MDOC's procedure by sending defendant Heyns a document labeled as a "Motion for a Declaratory Ruling" (Plf. Brief at 2, Page ID 138, 160-61) was utterly ineffectual.  Plaintiffs did not properly exhaust any claim against defendants before they filed this

---

[2]Effective January 22, 2015, the MDOC revised Policy Directive 05.03.150.  The current procedure for seeking MDOC recognition of a religious group is found in paragraphs K and L.  Plaintiffs may well face a significant hurdle in the future if and when they seek MDOC recognition of Christian Identity as a faith group through the MDOC procedure given the racist, white supremacist literature connected with the Christian Identity group. *See Hayes v. Tennessee*, 424 F. App'x 546 (2011).

lawsuit.[3]  I find that defendants have carried their burden on the affirmative defense and are entitled to dismissal of all of plaintiff's claims.

### Recommended Disposition

For the foregoing reasons, I recommend that all plaintiffs' claims against MTU defendants Stoddard, Young, and Leslie be dismissed as moot.  I recommend that defendants' motion for summary judgment (docket # 18) be granted and that all plaintiffs' claims be dismissed.

Dated:  May 7, 2015                  /s/  Phillip J. Green
                                     United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).

---

[3]Prisoners cannot file their lawsuit first and then exhaust their administrative remedies after-the-fact.  *See Garren v. Prisoner Health Servs.*, No. 11-14650, 2012 WL 4450495, at * 2 (E.D. Mich. Aug. 6, 2012); *Rhinehart v. Scutt*, No. 2-10-cv-10006, 2011 WL 679699, at * 5 (E.D. Mich. Jan. 14, 2011); *Ross v. Duby*, No. 1:09-cv-531, 2010 WL 3732234, at * 1 (W.D. Mich. Sept. 17, 2010).